1
2
3
4
5
6
7
8

UNITED STATES DISTRICT
WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

9   MONET CARTER-MIXON, as Personal
    Representative of the Estate of MANUEL
10  ELLIS, and MARCIA CARTER,

11  Plaintiffs,                              No. _____

12  v.                                       COMPLAINT FOR DAMAGES UNDER
                                             42 § U.S.C 1983 AND WASHINGTON
13                                           LAW
    CITY OF TACOMA, CHRISTOPHER
14  BURBANK, MATTHEW COLLINS,                JURY DEMAND
    MASYIH FORD, TIMOTHY RANKINE,
15  ARMANDO FARINAS, RON
    KOMAROVSKY, PIERCE COUNTY, GARY
16  SANDERS, and ANTHONY MESSINEO,

17  Defendants.

18
19          Plaintiffs, MONET CARTER-MIXON as Personal Representative of the ESTATE OF

20  MANUEL ELLIS, and MARCIA CARTER, by and through their attorneys, allege as follows:

21  **I.      NATURE OF ACTION**

22          1.1.   <u>Introduction.</u> This case arises from the wrongful killing of Manuel Ellis in Tacoma,

23          Washington on March 3, 2020. This is a civil rights action brought by Plaintiffs

24          Monet Carter-Mixon, as Personal Representative of the Estate of Manuel Ellis, and

25          Marcia Carter, pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth

26          Amendments, as well as pendent claims under Washington Law. Plaintiffs' claims

27

COMPLAINT - 1

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675

are asserted against the City of Tacoma; Tacoma Police Officers Matthew Collins, Christopher Burbank, Timothy Rankine, Masyih Ford, Armando Farinas, and Ron Komarovksy; Pierce County; and Pierce County Sheriff Deputies Gary Sanders and Anthony Messineo.

1.2.    Officers Matthew Collins, Christopher Burbank, Timothy Rankine, Masyih Ford, Armando Farinas, and Ron Komarovsky were operating under the reckless direction and supervision of the Defendant City of Tacoma at the time Manuel Ellis was killed.

1.3.    Despite the Defendant Officers wrongful conduct, Tacoma has effectively approved and ratified their actions. The City of Tacoma implicitly and overtly condones and defends officers that use excessive force against individuals. Tacoma police officers are aware that they are unlikely to receive any discipline when they use deadly force against a human being.  The City of Tacoma repeatedly fails to discipline officers who commit acts of excessive force, especially when it involves the use of deadly force. Tacoma fails to identify officers who may have violated individuals' Fourth Amendment rights. Tacoma fails to log, document, and investigate allegations of officer misconduct. The City of Tacoma's policies provide that documentation concerning complaints against officers and employee reprimands is routinely destroyed. When Tacoma officers are investigated for alleged misconduct the investigations are negligently conducted, and fail to adhere to established law enforcement standards and Washington law. For these and other reasons, the City of Tacoma is liable for the violation of Manuel Ellis' civil rights and wrongful death.

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675

1.4.    Deputy Gary Sanders and Lieutenant Anthony Messineo were operating under the reckless direction and supervision of the Defendant Pierce County at the time Manuel Ellis was killed.

1.5.    Despite the wrongful conduct of Deputy Gary Sanders and Lieutenant Anthony Messineo, Pierce County has effectively approved and ratified their actions. Pierce County implicitly and overtly condones and defends officers that use excessive force against individuals. Pierce County law enforcement officers are aware that they are unlikely to receive any discipline when they use deadly force against a human being. Pierce County repeatedly fails to discipline officers who commit acts of excessive force, especially when it involves the use of deadly force.  Pierce County fails to identify officers who may have violated individuals' Fourth Amendment rights. Pierce County fails to log, document, and investigate allegations of officer misconduct. Pierce County's policies provide that documentation concerning complaints against officers and employee reprimands is routinely destroyed. When Pierce County officers are investigated for alleged misconduct the investigations are negligently conducted, and fail to adhere to established law enforcement standards and Washington law. For these and other reasons, Pierce County is liable for the violation of Manuel Ellis' civil rights and wrongful death.

## II.    PARTIES

2.1    <u>Plaintiff Monet Carter-Mixon:</u> Monet Carter-Mixon ("Ms. Carter-Mixon") is the Personal Representative of the Estate of Manuel Ellis.  She is the decedent's sister

COMPLAINT - 3

and a resident of Pierce County, Washington. Ms. Carter-Mixon brings this lawsuit on behalf of the Estate and statutory beneficiaries of Manuel Ellis.

2.2    <u>Plaintiff Marcia Carter:</u>  Marcia Carter ("Ms. Carter") is the mother of Manuel Ellis and she is a resident of Pierce County, Washington.

2.3    <u>Defendant Christopher Burbank:</u> At all times relevant, Christopher Burbank ("Office Burbank") was employed as a law enforcement officer by the Tacoma Police Department and was acting within the course and scope of his employment with the City of Tacoma and under the color of state law.  Officer Burbank's acts alleged herein were taken for the benefit of the City of Tacoma and his marital community.

2.4    <u>Defendant Matthew Collins</u>: At all times relevant, Matthew Collins ("Officer Collins") was employed as a law enforcement officer by the Tacoma Police Department and was acting within the course and scope of his employment with the City of Tacoma and under the color of state law.  Officer Collins' acts alleged herein were taken for the benefit of the City of Tacoma and his marital community.

2.5    <u>Defendant Timothy Rankine:</u> At all times relevant, Timothy Rankine ("Officer Rankine") was employed as a law enforcement officer by the Tacoma Police Department and was acting within the course and scope of his employment with the City of Tacoma and under the color of state law.  Officer Rankine's acts alleged herein were taken for the benefit of the City of Tacoma and his marital community.

2.6    <u>Defendant Masyih Ford</u>: At all times relevant, Masyih Ford ("Officer Ford") was employed as a law enforcement officer by the Tacoma Police Department and was acting within the course and scope of his employment with the City of Tacoma and

COMPLAINT - 4

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675

under the color of state law. Officer Ford's acts alleged herein was taken for the benefit of the City of Tacoma and his marital community.

2.7   <u>Defendant Armando Farinas:</u> At all times relevant, Armando Farinas ("Officer Farinas") was employed as a law enforcement officer by the Tacoma Police Department and was acting within the course and scope of his employment with the City of Tacoma and under the color of state law.  Officer Farinas' acts alleged herein were taken for the benefit of the City of Tacoma and his marital community.

2.8   <u>Defendant Ron Komarovsky:</u> At all times relevant, Ron Komarovsky ("Officer Komarovsky") was employed as a law enforcement officer by the Tacoma Police Department and was acting within the course and scope of his employment with the City of Tacoma and under the color of state law.  Officer Komarovsky's acts alleged herein were taken for the benefit of the City of Tacoma and his marital community.

2.9   <u>Defendant City of Tacoma</u>: The City Tacoma is a municipal corporation located in the Western District of Washington. At all times material to this Complaint, Officers Collins, Burbank, Rankine, Ford, Farinas, and Komarovsky were agents of the City of Tacoma, acting within the scope of their employment, and under color of state law. The civil rights violations delineated herein were proximately caused by Tacoma's policies, customs, and the decisions of its policy-makers.

2.10  <u>Defendant Gary Sanders:</u>  At all times relevant, Gary Sanders ("Deputy Sanders") was employed as a law enforcement officer by the Pierce County Sheriff's Office and was acting within the course and scope of his employment with Pierce County

COMPLAINT - 5

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675

and under the color of state law. Deputy Sanders' acts alleged herein were taken for the benefit of Pierce County and his marital community.

2.11    <u>Defendant Anthony Messineo:</u> At all times relevant, Anthony Messineo ("Lieutenant Messineo") was employed as a law enforcement officer by the Pierce County Sheriff's Office and was acting within the course and scope of his employment with Pierce County and under the color of state law. Lieutenant Messineo's acts alleged herein were taken for the benefit of Pierce County and his marital community.

2.12    <u>Defendant Pierce County</u>: Pierce County is a municipal corporation located in the Western District of Washington. At all times material to this Complaint, Deputy Sanders and Lieutenant Messineo were agents of Pierce County, acting within the scope of their employment, and under color of state law. The civil rights violations delineated herein were proximately caused by Pierce County's policies, customs, and the decisions of its policy-makers.

## III.    JURISDICTION AND VENUE

3.1     This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C §§ 1331 and 1343.

3.2     This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

3.3     Venue is appropriate in the Western District of Washington pursuant to 28 U.S.C. § 1391 because at least some of the Defendants reside in this judicial district and because the events and omissions giving rise to the claims alleged herein occurred within the Western District of Washington, Tacoma Division.

COMPLAINT - 6

## IV.   FACTS

4.1   On the evening of March 3, 2020 Manuel Ellis decided to go to his neighborhood 7-Eleven store to get some snacks. He would never make it back home alive.

4.2   At approximately 11:11 p.m., Manuel purchased a box of raspberry doughnuts and a bottle of water. The clerk who sold the items to him did not observe any odd behavior by Manuel or any indications that he was under the influence of drugs or alcohol.

4.3   As Manuel was walking home from the 7-Eleven he was confronted by Officer Collins and Officer Burbank at the intersection of 96th Street S. and Ainsworth Avenue S. in Tacoma.

4.4   As confirmed by multiple eyewitnesses, Manuel was not the aggressor and Officers Collins and Burbank physically assaulted him while his back was turned.

4.5   Officer Burbank initially struck Manuel with the door of his vehicle.

4.6   The Officers then got out of their marked Tacoma Police Department vehicle, slammed Manuel down, and repeatedly struck him in the face with punches and elbows.[1]

4.7   Manuel was unarmed during this incident.

4.8   Officer Collins was armed and outfitted in body armor at the time of the incident. He had previously served in the United States Army for approximately eight years and was very experienced in hand to hand combat. In addition to his Army Special Forces training Officer Collins had extensive training in grappling and martial arts.

---

[1] Part of this initial assault was recorded with a cell phone video by an independent eyewitness (S.M.) who happened to be driving behind the marked Tacoma Police Department vehicle. The two cell phone videos recorded by the eyewitness S.M. are publicly available at https://www.youtube.com/watch?v=06fdr3ey62s.

COMPLAINT - 7

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675

4.9     Officer Burbank was armed and outfitted in body armor at the time of the incident. He had previously served in the United States Army for approximately eight years and was very experienced in hand to hand combat.

4.10    Officer Collins elbowed Manuel in the face multiple times. He decided to use elbows rather that closed fist punches because he was concerned about breaking his hands.

4.11    After striking Manuel several times in the face Officer Collins placed him in a chokehold.[2]

4.12    As Manuel was being choked, Officer Burbank pointed a X-26 TASER at his chest.

4.13    Manuel put both of his hands up and tried to surrender to the Officers.

4.14    The Officers continued to escalate the incident and Officer Burbank tased Manuel in the chest. Officer Burbank proceeded to tase Manuel two more times while he was being restrained.[3]

4.15    With each shot, the X-26 TASER releases approximately 50,000 volts of electricity for a period of five seconds. Being tased causes significant pain and can cause involuntary muscle contractions, defecation, and loss of control of bodily functions. Further, when pointed at a person, a taser can sometimes appear to be a firearm.

4.16    The pain and fear that Manuel experienced was excruciating as he was repeatedly tased while being choked.

4.17    Officers Rankine and Ford were the next officers to arrive on scene.

---

[2] Officer Collins has characterized the chokehold as a Lateral Vascular Neck Restraint.
[3] Portions of this assault were recorded with a cell phone video by an independent eyewitness (S.C.) who happened to be approaching the intersection perpendicular to the Tacoma Police Department vehicle. The cell phone video recorded by the eyewitness S.C. is publicly available at https://www.youtube.com/watch?v=kj8Qk9oGXa4.

COMPLAINT - 8

4.18   After the incident, Officer Rankine reported that when he arrived on scene he observed a black male subject that was proned out on the ground on his stomach. Officer Rankine stated, "Officer Burbank was on top of his upper torso, straddling his upper torso almost like he was riding a horse, with both of his hands pressed down on his upper body and then I saw Officer Collins try and secure both his legs."

4.19   Officer Rankine joined in holding Manuel down and restraining him. Manuel was face down and not resisting as Officer Rankine put his bodyweight on him, Manuel struggled to breathe. At the time of the incident Officer Rankine weighed approximately two hundred pounds.

4.20   Manuel was already in handcuffs when Officer Ford helped restrain him on the ground.

4.21   Manuel cried out, "I can't breathe sir, I can't breathe!"

4.22   One of the Officers responded to Manuel's cries for help by telling him to, "shut the fuck up!"

4.23   The Officers continued to aggressively restrain Manuel and they put hobbles on his legs.

4.24   Hobbling is more commonly known as "hogtieing."[4]

4.25   As Officer Rankine applied pressure to Manuel's back, a gang of officers helped hogtie Manuel.

4.26   Deputy Sanders grabbed Manuel's leg and assisted in restraining him.

---

[4] "Hogtie: to fasten someone's hands and feet together, or to fasten all four legs of an animal together.
Example: He was hogtied like a gutted deer."
Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/hogtie.

COMPLAINT - 9

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675

4.27    At least four Officers helped hold Manuel down, physically restrain him, and hogtie
him in the street.

4.28    At least one of the involved Officers described the hobble as resembling a "dog
leash."

4.29    The Defendant Officers treated Manuel like a dangerous wild animal as opposed to
a human being.

4.30    Even after Manuel was handcuffed and hogtied, Officers Collins, Burbank,
Rankine and Ford continued to place their body weight on Manuel. During that
time, Manuel continued to struggle for life and tried to say that he couldn't breathe.

4.31    Officer Komarovsky also arrived at the scene and used his knees, hands, and
bodyweight to prevent Manuel from moving.

4.32    As Manuel laid on the street beaten, hogtied, handcuffed, and under the crushing
weight of several grown men, Officer Farinas arrived at the scene.

4.33    Officer Farinas observed that Manuel was lying face down in the street, restrained
by handcuffs and a hobble.

4.34    Officer Farinas noted that Manuel had blood on his face and blood was coming
from his mouth.

4.35    Officer Farinas placed a spit mask (a/k/a spit hood, transport hood, or spit sock)
over Manuel's head.

4.36    Manuel was face down on the pavement and restrained when the spit mask was
placed over his head.

4.37    Manuel was not trying to spit on any of the law enforcement officers at the time the
spit mask was put over his head.

COMPLAINT - 10

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675

4.38    Prior to the application of the spit mask Manuel had said that he could not breathe.

4.39    Despite that fact, none of the individually named Defendants did anything to stop

Officer Farinas from putting a TPD-issued spit mask on Manuel.

4.40    Manuel was bleeding from his face and mouth at the time spit mask was put over

his head.

4.41    The application of the spit mask further inhibited Manuel's ability to breathe.

4.42    The TPD-issued spit mask should have never been used on Manuel.

4.43    The TPD-issued spit mask came with the following warnings:



Read Instructions Prior to Use

**WARNING:** IMPROPER USE OF THE TRANSPORT HOOD
MAY CAUSE INJURY OR DEATH

The TranZport Hood™ is a temporary protective hood for use on those persons where a risk of exposure to infectious disease is present. If used properly, the TranZport Hood can reduce the risk of the wearer transmitting fluids (saliva and mucous) from the facial area, as by spitting, sneezing or coughing. Improper use may result in serious injury or death due to asphyxiation, suffocation or drowning in ones own fluids.

CONDITIONS FOR USE:



**CONDITIONS FOR USE:**

- DO NOT USE this product unless prisoner is under control and restrained
- Wearer must be under constant visual supervision and should NEVER be left unattended
- DO NOT USE on anyone that is vomiting, having difficulty breathing, or is bleeding profusely from the area around the mouth or nose
- Remove prisoner's jewelry and eyewear before application
- If there is difficulty applying due to large size head, discontinue use

Re-Order #8330-0-2C

COMPLAINT - 11

4.44   The use of the spit mask on Manuel was a proximate cause of his death.

4.45   The spit mask was used as a torture device for a punitive, non-law enforcement purpose. The spit mask was used to punish, dehumanize, and terrify Manuel.

4.46   Lieutenant Messineo arrived at the scene and reportedly never touched Manuel. He saw four officers controlling Manuel so "there was nothing for him to do."

4.47   Lieutenant Messineo would later describe Manuel's movements as "thrashing around like a fish out of water."

4.48   Despite that observation Lieutenant Messineo made no effort to assist Manuel.

4.49   Deputy Sanders also made no effort to assist Manuel.

4.50   Several minutes into the assault Manuel went limp and medical assistance was requested.

4.51   Officer Rankine has significant first aid experience from his time in the Army.

4.52   Officer Rankine did not attempt CPR or any other lifesaving measures while waiting for Fire/EMS to arrive.

4.53   The Tacoma Fire Department arrived at the scene after Manuel had been unconscious and unresponsive for several minutes.

4.54   None of the law enforcement officers at the scene made any efforts to remove the spit mask, handcuffs, or hobbles while waiting for the Fire Department to arrive. Officers continued to restrain Manuel on the ground even after he had been rendered unconscious.

4.55   The Defendants did not exhibit any concern for Manuel's safety or well-being. They did not care whether he lived or died.

COMPLAINT - 12

4.56   Rather than transport Manuel to the hospital Tacoma firefighters attempted to provide medical aid at the scene. Their efforts were unsuccessful and Manuel was pronounced dead at the scene.

4.57   The body of Manuel Ellis was transported to the Pierce County Medical Examiner's Office for an autopsy.

4.58   Officer Farinas assisted in gathering evidence at the scene and took custody of a spent TASER cartridge.

4.59   Officer Farinas did so even though he had personally participated in the incident by putting the spit mask on Manuel.

4.60   Officer Farinas was assigned to be the Critical Incident Liaison Officer (CILO) for Officer Burbank.

4.61   Officer Farinas should never have been named the CILO because he had personally participated in the incident by putting the spit mask on Manuel.

4.62   The Pierce County Sheriff's Office took over the initial investigation into Manuel's death on the morning of March 4, 2020.

4.63   Detective Byron Brockway of the Pierce County Sheriff's Office was one of the lead officers assigned to the investigation.

4.64   Detective Brockway documented in his report that "Det/Sgt Sanders helped secure the subject's legs for hobbles."

4.65   Under the laws of the State of Washington, the investigating agency must conduct a conflict check prior to initiating an investigation.

4.66   Pierce County was aware or should have been aware that several of its law enforcement personnel were present while Manuel was being killed, that Deputy

COMPLAINT - 13

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675

Sanders participated in restraining Manuel, and that its personnel could be liable for failing to intervene to stop excessive force. As a result, the Pierce County Sheriff's Office should have immediately recused itself from the Manuel Ellis investigation.

4.67    Instead, the Pierce County Sheriff's Office launched its sham investigation of this killing.

4.68    Through its official spokesperson Ed Troyer, the Pierce County Sheriff's Office distributed several false statements to the public in the weeks following the death of Manuel Ellis.

4.69    Mr. Troyer told the public that Manuel had not been tased.

4.70    Mr. Troyer told the public that Manuel had not been choked.

4.71    Mr. Troyer's false statements were intended to pacify community outrage and help conceal the reality of what had happened on March 3, 2020 - that law enforcement officers with the Tacoma Police Department and Pierce County Sheriff's Office had unlawfully killed Manuel Ellis.

4.72    Pierce County violated both the spirit and letter of I-940 with its investigation of this incident.

4.73    In violation of Washington law, Pierce County (a) failed to give weekly press releases in relation to its investigation, (b) failed to provide the Ellis family with a liaison that would keep them informed on the status of the investigation, and (3) failed to appoint any civilian representatives to its investigative team.

4.74    The investigation by Pierce County was negligently conducted and failed to adhere to established law enforcement standards.

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675

4.75   Pierce County investigators did not try to interview Officer Farinas.

4.76   Pierce County investigators did not try to interview Officer Komarovsky.

4.77   Pierce County investigators did not try to identify or find any independent eyewitnesses.

4.78   Pierce County investigators did not try to identify the car (or find its driver) which allegedly drew the initial attention of Officers Collins and Burbank.

4.79   Officer Henry Betts of the Tacoma Police Department informed Pierce County investigators on March 4, 2020 that the four officers were all invoking their Fifth Amendment Rights.

4.80   Pierce County investigators did not interview Officers Collins, Burbank, Rankine, or Ford until several days after the death of Manuel Ellis.

4.81   Pierce County investigators did not video record the interviews, despite the fact that they had the means easily available to do so.

4.82   The interviews conducted by Pierce County investigators were tainted from the start because the Pierce County Sheriff's Office was not an independent agency.

4.83   At the time Pierce County investigators interviewed Officers Collins, Burbank, Rankine, and Ford they knew or should have known that Pierce County could potentially be held liable for the death of Manuel Ellis.

4.84   Immediately following the death of Manuel Ellis, the City of Tacoma put Officers Collins, Burbank, Rankine, and Ford on paid administrative leave. Tacoma did not put Officers Farinas or Komarovsky on leave.

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675

4.85    Approximately two weeks after the incident Officers Collins, Burbank, Rankine, and Ford were all allowed to return from administrative leave after completing a psychological examination.

4.86    The Tacoma Police Department failed to conduct any meaningful review of this incident prior to allowing Officers Collins, Burbank, Rankine, and Ford to return from administrative leave.

4.87    The policy, custom, or practice of the Tacoma Police Department failing to conduct any meaningful review of alleged excessive force incidents, including deadly force incidents, prior to clearing officers to return to regular duty is a proximate cause of the civil rights violations delineated herein.

4.88    Pierce County Medical Examiner Dr. Thomas B. Clark, III finalized his autopsy report in May 2020 and determined that the manner of death was homicide. Dr. Clark determined that the primary cause of Manuel Ellis' death was hypoxia due to physical restraint.

4.89    Victoria Woodards is the Mayor of Tacoma. On June 4, 2020, after the public release of S.M.'s cell phone video showing Officers Collins and Burbank assaulting Manuel Ellis, Mayor Woodards voluntarily participated in a press conference and addressed the public.

4.90    Among other statements at the June 4, 2020 press conference Mayor Woodards said that, "I am telling you that I am going to call for several things. And the officers that committed this crime should be fired and prosecuted to the full extent of the law."[5]

---

[5] Video of Mayor Woodards June 4, 2020 press conference is publicly available at
https://www.youtube.com/watch?v=xv_RSDr0kOk&t=151s.

COMPLAINT - 16

4.91    Tacoma has not followed through on the Mayor's statement. Despite overwhelming evidence that has come to light in the last 18 months showing that Tacoma police officers lied to investigators and wrongfully killed Manuel Ellis, Tacoma has ratified the actions of its Officers and declined to take any adverse action against them.

*4.92*    As the Ellis family and social justice organizations were demanding a full and fair investigation into the killing of Manuel Ellis, other officers within the Tacoma Police Department were sending texts of support to the Defendants. One such text was sent on June 5, 2020 and said, *"Just wanted to let you guys know that the whole second floor backs you. You guys are studs and did nothing wrong.... Please don't hesitate to call or text. I'm here for you guys no matter what and will help in any way I can."* The Tacoma officer who sent that text has been sued on two separate occasions for having shot people. In one case, as the person screamed out in pain the officer told him to "shut the fuck up," shockingly similar to the response to Manuel Ellis' cry for help. The Tacoma Police Department's formal and informal support of the Defendant Officers reflects the policies and customs of Tacoma that ratifies and covers up officers' misconduct and illegal use of excessive force.

4.93    The Pierce County Sheriff's Office should never have been leading the Manuel Ellis investigation. From the very beginning the agency had an obvious conflict of interest because Deputy Sanders had assisted in restraining Manuel.

4.94    The Washington State Patrol ultimately took over the Manuel Ellis investigation. In addition to reviewing evidence already gathered by Pierce County the agency

COMPLAINT - 17

undertook its own investigation and attempted to interview some relevant individuals.

4.95    Through his counsel, Officer Collins invoked his Fifth Amendment right against self-incrimination in October 2020 and refused to provide any statements to Washington State Patrol investigators.

4.96    Through his counsel, Officer Burbank invoked his Fifth Amendment right against self-incrimination in October 2020 and refused to provide any statements to Washington State Patrol investigators.

4.97    Through his counsel, Officer Rankine invoked his Fifth Amendment right against self-incrimination in October 2020 and refused to provide any statements to Washington State Patrol investigators.

4.98    Through his counsel, Officer Ford invoked his Fifth Amendment right against self-incrimination in October 2020 and refused to provide any statements to Washington State Patrol investigators.

4.99    Through his counsel, Officer Farinas invoked his Fifth Amendment right against self-incrimination in October 2020 and refused to provide any statements to Washington State Patrol investigators.

4.100   The Washington State Patrol never requested an interview from Officer Komarovsky.

4.101   The Washington State Patrol concluded its initial investigation in November 2020 and transmitted its file materials to the Washington State Attorney General's Office for potential prosecution.

COMPLAINT - 18

4.102   After conducting an exhaustive review of the evidence, and applicable law, the Washington State Attorney General's Office announced its charging decision in May 2021.

4.103   As set forth in the Declaration for Determination of Probable Cause filed in Pierce County Superior Court, Officers Collins, Burbank, and Rankine were criminally charged for killing Manuel Ellis:

---

"The charge of FELONY MURDER IN THE SECOND DEGREE against BURBANK and COLLINS is supported by the evidence that Ellis died during the course of and in furtherance of BURBANK and COLLINS's felonious assault and/or unlawful imprisonment of Ellis. The predicate felonies of assault in the second and third degrees are supported by evidence that BURBANK and COLLINS, acting as either principles or accomplices, tackled and struck Ellis multiple times, applied an LVNR on Ellis, and shot him with a taser three times, all without justification for these uses of force. Accordingly, this evidence, along with other evidence detailed above, supports that BURBANK and COLLINS committed second degree assault by any of the following means: (1) intentionally assaulting Ellis and thereby recklessly inflicting substantially bodily harm; (2) assaulting Ellis with the intent to commit unlawful imprisonment; and/or (3) assaulting Ellis by strangulation or suffocation. The evidence also supports that BURBANK and COLLINS committed third-degree assault by either of the following means: (1) acting with criminal negligence in causing bodily harm to Ellis by means

COMPLAINT - 19

of a weapon or other instrument or thing likely to produce bodily harm; and/or (2) causing bodily harm to Ellis accompanied by substantial pain that extends for a period sufficient to cause considerable suffering. The predicate felony of unlawful imprisonment is also supported by the above-detailed evidence that BURBANK and COLLINS knowingly restrained Ellis without justification.

The charge of FIRST DEGREE MANSLAUGHTER against BURBANK and COLLINS is supported by the above-detailed evidence showing that the officers recklessly caused Ellis's death when they (1) assaulted and restrained Ellis without justification; (2) failed to render or call for urgent medical aid after Ellis exhibited medical distress and said he could not breathe; (3) placed Ellis in hogtie restraints; (4) failed to alert other officers to Ellis's medical distress; and (5) failed to intervene when the officer put the spit hood on Ellis and then failed to remove the spit hood, among other facts and circumstances.

The charge of FIRST DEGREE MANSLAUGHTER against RANKINE is supported by the above-detailed evidence showing that RANKINE recklessly caused Ellis's death when, after hearing Ellis say he could not breathe, RANKINE continued to hold Ellis in the prone position and to apply pressure onto his back. The charge is also supported by the evidence that RANKINE failed to render or call for urgent medical aid as Ellis exhibited signs of a medical crisis, failed to alert other officers to Ellis's medical distress, failed to stop another officer from putting a spit hood over Ellis's head, and failed to remove the spit hood as Ellis's condition declined, among other facts and circumstances."

COMPLAINT - 20

(Declaration for Determination of Probable Cause filed in *State of Washington v. Christopher Shane Burbank*, Pierce County Superior Court case number 21-1-01286-6, attached hereto as Exhibit "A").

4.104   Officers Collins, Burbank, and Rankine have pled not guilty to the criminal charges.

4.105   Even after Officers Collins, Burbank, and Rankine were charged with unlawfully killing Manuel Ellis, the City has still declined to take any adverse action against them.

4.106   Even after Officers Collins, Burbank, and Rankine were charged with unlawfully killing Manuel Ellis, Tacoma has continued to pay the men their regular wages. To date, Officers Collins, Burbank, and Rankine have received over 15 months of compensation while on paid administrative leave.

4.107   Tacoma citizens, including family members of Manuel Ellis, have effectively been forced to help subsidize and support the unlawful conduct of Officers Collins, Burbank, and Rankine through the taxes they must pay to the City.

4.108   The Defendants did not have a legitimate justification for stopping, seizing and using deadly force against Manuel.

4.109   The Defendants told many lies about the encounter and omitted critical facts from their reports. As one example, Officers Collins and Burbank never advised anyone that Manuel Ellis had put both of his hands up and tried to surrender.

4.110   Manuel Ellis experienced significant pain, suffering, and fear prior to dying.

4.111   Manuel Ellis was 33 years old when he was killed. He was a black man. Manuel was treated like he was a dangerous wild animal. Defendants described Manuel as

COMPLAINT - 21

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675

being aggressive, growling, "baring his teeth," and having "freakish" superhuman strength.

4.112   The Defendant' actions were motivated by cruel, racist intent, and a belief that they could get away with lynching a black man on the public streets of Tacoma.

4.113   If not for the bravery of S.M. and S.C. using their cell phones to record part of this incident and ultimately coming forward as independent eyewitnesses to say what they observed, the Defendants' lies might have gone unchallenged and they likely would have avoided all consequences for killing Manuel Ellis.

4.114   As of March 3, 2020, the Tacoma Police Department had not outfitted its vehicles with dash cameras, or its patrol officers with body cams.

4.115   The Tacoma Defendants believed they could act with impunity and kill Manuel without suffering any repercussions, in part because they believed they were not being recorded during the incident.

4.116   The Tacoma Defendants also believed they could kill Manuel without any repercussions because Tacoma implicitly and overtly condones and defends officers that use excessive force against individuals. Tacoma police officers are aware that they are unlikely to receive any discipline when they use deadly force against a human being. The City of Tacoma repeatedly fails to discipline officers who commit acts of excessive force, especially when it involves the use of deadly force.

4.117   The City of Tacoma has a policy or custom of failing to discipline officers who violate the Fourth Amendment rights of individuals, use excessive force, seize

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675

people without probable cause, fail to intervene to stop excessive force, and lie to coverup relevant evidence.

4.118   The City of Tacoma's policy or custom tolerating and condoning police misconduct by its personnel, including Officers Collins, Burbank, Rankine, Ford, Farinas, and Komarovsky directly and proximately resulted in the death of Manuel Ellis.

4.119   As of March 3, 2020, the Pierce County Sheriff's Office had not outfitted its vehicles with dash cameras, or its patrol officers with body cams.

4.120   The Pierce County Defendants believed they could act with impunity and kill Manuel without suffering any repercussions, in part because they believed they were not being recorded during the incident.

4.121   The Pierce County Defendants also believed they could kill Manuel without any repercussions because Pierce County implicitly and overtly condones and defends officers that use excessive force against individuals. Pierce County law enforcement officers are aware that they are unlikely to receive any discipline when they use deadly force against a human being. Pierce County repeatedly fails to discipline officers who commit acts of excessive force, especially when it involves the use of deadly force.

4.122   Pierce County has a policy or custom of failing to discipline officers who violate the Fourth Amendment rights of individuals, use excessive force, seize people without probable cause, fail to intervene to stop excessive force, and lie to coverup relevant evidence.

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675

4.123   Pierce County's policy or custom tolerating and condoning police misconduct by its personnel, including Deputy Sanders and Lieutenant Messineo, directly and proximately resulted in the death of Manuel Ellis.

4.124   Tacoma failed to adequately train and supervise Defendants Collins, Burbank, Rankine, Ford, Farinas, and Komarovsky.

4.125   Pierce County failed to adequately train and supervise Defendants Sanders and Messineo.

4.126   Manuel's family and loved ones miss him dearly. Manuel was a central figure in their lives. He would make sure that his mother's lawn was mowed and that she was taking her medication. Manuel was always present in his mother's life.  Manuel also provided his sister with significant care and support. He regularly watched her children and was on the list of people authorized to pick them up from school. His nephews and nieces miss him as well. Tragically, Manuel's minor child J.C. is forced to grow up without his father's love and support.

## V.   CAUSES OF ACTION

5.1.   <u>First Cause of Action.</u> Defendants Matthew Collins, Christopher Burbank, Timothy Rankine, Masyih Ford, Armando Farinas, Ron Komarovsky, Gary Sanders, and Anthony Messineo are liable to the Plaintiffs for using excessive/deadly force and violating Manuel Ellis's Fourth and Fourteenth Amendment rights, and/or for failing to intervene to prevent the other Officers from violating the decedent's rights. (42 U.S.C. § 1983).

5.2.   The actions of the Defendants were objectively unreasonable, violated clearly established law, and Plaintiffs' claims are not barred by qualified immunity.

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675

5.3.    <u>Second Cause of Action.</u> Defendant City of Tacoma is liable to the Plaintiffs for the violations of Manuel Ellis's constitutional rights under 42 U.S.C. § 1983 because the Defendant's policies, procedures, or customs were the moving force of the constitutional violations.

5.4.    The myriad of failures described in the paragraphs above were due to, and were emblematic of, the City of Tacoma's inadequate and reckless policies, procedures, customs, and supervision regarding arrests, the Fourth Amendment, and the use of deadly force.

5.5.    The City of Tacoma was deliberately indifferent to the fact that its inadequate and reckless policies, procedures, customs, training, and supervision would be the moving force behind its Police Officers using unnecessary and unreasonable force.

5.6.    Upon information and belief, Defendants Matthew Collins, Christopher Burbank, Timothy Rankine, Masyih Ford, Armando Farinas, and Ron Komarovsky were not subject to any discipline as a result of their role in causing Manuel's unjustified and unnecessary death, or the violations of policy and reckless actions described above.

5.7.    Defendant City of Tacoma's ratification of this unlawful killing continues, and its ratification and failure to take corrective action reflects its deliberate indifference to the danger of constitutional violations and physical harm its policies and practices create.

5.8.    <u>Third Cause of Action.</u> Defendant Pierce County is liable to the Plaintiffs for the violations of Manuel Ellis's constitutional rights under 42 U.S.C. § 1983 because the Defendant's policies, procedures, or customs were the moving force of the constitutional violations.

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675

5.9.     The myriad of failures described in the paragraphs above were due to, and were emblematic of, Pierce County's inadequate and reckless policies, procedures, customs, and supervision regarding arrests, the Fourth Amendment, and the use of deadly force.

5.10.    Pierce County was deliberately indifferent to the fact that its inadequate and reckless policies, procedures, customs, training, and supervision would be the moving force behind its officers using unnecessary and unreasonable force.

5.11.    Upon information and belief, Defendants Gary Sanders and Anthony Messineo were not subject to any discipline as a result of their role in causing Manuel's unjustified and unnecessary death, or the violations of policy and reckless actions described above.

5.12.    Defendant Pierce County's ratification of this unlawful killing continues, and its ratification and its failure to take corrective action reflects its deliberate indifference to the danger of constitutional violations and physical harm its policies and practices create.

5.13.    Fourth Cause of Action. Defendants Matthew Collins, Christopher Burbank, Timothy Rankine, Masyih Ford Armando Farinas, Ron Komarovsky, Gary Sanders, and Anthony Messineo committed the tort of assault and battery.

5.14.    Fifth Cause of Action. Defendants Matthew Collins, Christopher Burbank, Timothy Rankine, Masyih Ford, Armando Farinas, Ron Komarovsky, Gary Sanders, and Anthony Messineo are liable to the Plaintiffs for the torts of outrage and intentional infliction of emotional distress.

COMPLAINT - 26

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675

5.15. <u>Sixth Cause of Action.</u> Defendants Matthew Collins, Christopher Burbank, Timothy Rankine, Masyih Ford, Armando Farinas, Ron Komarovsky, Gary Sanders, and Anthony Messineo are liable for intentionally causing the wrongful death of Manuel Ellis.

5.16. <u>Seventh Cause of Action.</u> Defendants Matthew Collins, Christopher Burbank, Timothy Rankine, Masyih Ford, Armando Farinas, Ron Komarovsky, Gary Sanders, and Anthony Messineo are liable for negligently causing the wrongful death of Manuel Ellis.

5.17. <u>Eighth Cause of Action.</u> Defendant City of Tacoma is liable for the tortious actions of its officers undertaken within the course and scope of their employment, pursuant to the doctrine of respondeat superior.[6]

5.18. <u>Ninth Cause of Action.</u> In committing the acts alleged in the preceding paragraphs, the Tacoma Police Officers acted at all relevant times within the scope of their employment with Tacoma. As a result, pursuant to State Law, Defendant City of Tacoma must indemnify the Defendant Officers for any judgment against them.

5.19. <u>Tenth Cause of Action.</u> Defendant Pierce County is liable for the tortious actions of its officers undertaken within the course and scope of their employment, pursuant to the doctrine of respondeat superior.

5.20. <u>Eleventh Cause of Action.</u> In committing the acts alleged in the preceding paragraphs, Deputy Sanders and Lieutenant Messineo acted at all relevant times within the scope of their employment with Pierce County. As a result, pursuant to

---

[6] Prior to filing this Complaint the Plaintiffs submitted Claim for Damages Forms to the City of Tacoma and Pierce County in compliance with RCW 4.96.020. Any prerequisites to bringing claims under Washington law have been satisfied.

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675

State Law, Defendant Pierce County must indemnify the Defendant Officers for any judgment against them.

5.21.   Twelfth Cause of Action. All Defendants are liable for damages arising from their unlawful conduct that caused the wrongful death of Manuel Ellis. The Defendants' actions as described in this Complaint were a substantial factor in bringing about Manuel's death, and without those actions, the death of Manuel would not have occurred.

5.22.   Marcia Carter has suffered complete destruction of her parent child relationship, loss of companionship, and mental anguish as a result of the wrongful death of her son.

5.23.   Thirteenth Cause of Action. Monet Carter-Mixon is the personal representative of the Estate of Manuel Ellis and she is authorized to pursue claims against the Defendants.

5.24.   Prior to his death, Manuel suffered serious personal injuries at the hands of the Defendants, including but not limited to severe pain and emotional distress.

5.25.   All Defendants are liable for these damages arising from their unlawful conduct that caused Manuel's severe pain and emotional distress in that Manuel's injuries were caused by the Defendants' wrongful acts, deliberate indifference, recklessness, neglect, carelessness, or unskillfulness while acting as agents of the City of Tacoma and/or Pierce County.

5.26.   The Defendants actions as described in this Complaint were a substantial factor in bringing about the injuries described in this Count, and without those actions, these injuries would not have occurred.

COMPLAINT - 28

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675

## VI. Plaintiffs' Immense Damages

6.1 Manuel Ellis (known to his family and friends as "Manny") was 33 years old when he died. Based on his life expectancy it is expected that he would have lived for several decades if his life had not been abruptly cut short by the Defendants.

6.2 Manuel had a passion for life. He loved music and sports. Manuel loved playing drums in his church band and enjoyed time with his family. He especially loved spending time with his mother, siblings, and other family members.

6.3 Manuel experienced unthinkable pain, suffering, and fear prior to death. Manuel suffered for an extended period of time before he passed away.

6.4 As a result of the killing of her son, Marcia Carter suffered injury to her parent child relationship with Manuel. She has suffered, and continues to suffer, serious emotional harm as a result of Defendants' unlawful conduct.

6.5 As a proximate result of the Defendant's unlawful conduct described above, Plaintiffs have incurred medical and funeral expenses, lost earnings and earning capacity, suffered physical and emotional pain, suffering, and disfigurement, lost liberty, lost the enjoyment of life, and suffered other special and general damages.

6.6 Plaintiffs seek recovery of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and applicable Washington law.

6.7 The actions of Defendants Collins, Burbank, Rankine, Ford, Farinas, Komarovsky, Sanders, and Messineo were reprehensible, malicious, oppressive, and showed reckless disregard for Manuel's life. Plaintiffs seek recovery of punitive damages from the individually named Defendants.

6.8     Per RCW 49.60.030, the Defendants are liable to the Plaintiffs for violation of the Plaintiffs' civil rights to the right to be free from discrimination because of race, creed, color, national origin, sex, honorably discharged veteran or military status, sexual orientation, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability is recognized as and declared to be a civil rights. Manuel Ellis was a black man who was stopped by police officers while walking home from 7-Eleven with doughnuts and a bottle of water. He was deemed suspicious by the officers and they beat, tased, choked, and hogtied him as a result of their false perceptions of Manuel Ellis that are irretrievably linked to his race.

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment in their favor and against Defendants; award compensatory damages and attorney fees, as well as punitive damages against the Defendants; and enter any additional relief this Court deems just and appropriate.

DATED this the 15th day of September, 2021.


JAMES BIBLE LAW GROUP


By _____
      James Bible, WSBA #33985
      14205 Se 36th Street Suite 100
      Bellevue, WA 98006
      Telephone: 425-519-3675
      Email:  James@biblelawgroup.com
      *Attorney for Plaintiffs*

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675

1

DERMER APPEL RUDER, LLC

2

3

4          By      s/Stephen Dermer
                   Stephen Dermer
5                  Georgia Bar No. 219267
                   6075 The Corners Parkway, Suite 210
6                  Peachtree Corners, GA 30092
                   Telephone: 404-881-3542
7                  Email:   sdermer@darlawllc.com
                   *Attorney for Plaintiffs*
8                  **(Pro Hac Vice application pending)**

9

10         By      s/ Mathew A. Ericksen Sr.
                   Matthew A. Ericksen, Sr.
11                 Georgia Bar No. 304088
                   6075 The Corners Parkway, Suite 210
12                 Peachtree Corners, GA 30092
                   Telephone: 404-881-3543
13                 Email:   mericksen@darlawllc.com
                   *Attorney for Plaintiffs*
14                 **(Pro Hac Vice application pending)**

15

16

17

18

19

20

21

22

23

24

25

26

27

JAMES BIBLE LAW GROUP
14205 SE 36TH STREET SUITE 100
Bellevue, Washington 98006
T: 425-519-3675