UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

| | |
|---|---|
| MONET CARTER-MIXON, as Personal Representative of the Estate of MANUEL ELLIS, and MARCIA CARTER,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF TACOMA, CHRISTOPHER BURBANK, MATTHEW COLLINS, MASYIH FORD, TIMOTHY RANKINE, ARMANDO FARINAS, RON KOMAROVSKY, PIERCE COUNTY, GARY SANDERS, and ANTHONY MESSINEO,<br><br>Defendants. | No. 3:21-CV-05692-LK<br><br>DEFENDANT RANKINE'S MOTION FOR COURT ORDER COMPELLING RELEASE OF MEDICAL RECORDS<br><br>NOTE ON MOTION CALENDAR: JULY 29, 2022 |

## I. INTRODUCTION

Defendant Timothy Rankine ("Rankine") seeks a court order to compel production of decedent Manuel Ellis' ("Ellis") medical records from providers who have refused to produce records pursuant to Rankine's subpoenas. Within the broad scope of civil discovery Rankine is plainly entitled to the records. Ellis' estate has put at issue the cause of Ellis' death as well as the reasonable damages, both of which require careful investigation into Ellis' medical, mental health and drug treatment history. Ellis' mental health and drug treatment providers have objected to a

Defendant Rankine's Motion for Court Order for
Medical Records - 1

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

traditional subpoena citing various state or federal laws requiring a court order or a release from the estate. None of the records sought are ultimately privileged and a court order requiring full production will foster efficient and effective completion of discovery.

## II.     BACKGROUND FACTS

A brief history of Plaintiff Manuel Ellis is necessary to show the import of his medical records in this matter. Mr. Ellis suffered from bipolar and schizoaffective disorder (with auditory hallucinations) and had a long history of severe methamphetamine addiction and serious health conditions, including an enlarged heart. *Declaration of Mark Conrad*, ("*Conrad Decl.*") at ¶ 3, Ex. A, E.

In September of 2019, Ellis had a psychotic episode; he attempted to rob a convenience store, struck the store clerk with his belt wrapped around his fist and attempted to grab the money out of the register. *Id*. at ¶ 4, Ex. B.  The store clerk was able to fight Ellis off and Ellis fled the store. He was later found by Pierce County deputies completely naked in the middle of the 13500 block of Pacific Avenue bleeding from his head. *Id.* Ellis initially complied with the deputies' commands to lay on the ground; however, he suddenly charged at the deputies who were forced to tase Ellis in order to handcuff him and take him into custody. *Id.*[1] The deputies then sent Ellis to the hospital for evaluation. *Id.*

While at the hospital, Ellis told staff that he was high on methamphetamine and did not remember the incident. *Id.* After being medically cleared, Ellis was booked into Pierce County Jail and charged with Second Degree Robbery. *Id.* Ellis' mental health records[2] reveal that he later told

---

[1] Eric Fountain, *Manny Ellis Tacoma's naked armed robbery suspect*, YouTube (Sept. 22, 2019), https://www.youtube.com/watch?v=SInYfPFSfGg (depicts Ellis naked, high on methamphetamine and having a psychotic episode while being arrested during September 2019 incident).

[2] The Pierce County Alliance mental health records were produced pursuant to a Search Warrant signed by Pierce County Superior Court Judge Sabrina Ahrens.

his treatment counsel that during this incident he binged on methamphetamine which led to "full psychosis." *Id*. at ¶ 5, Ex. C, p. 24, 31, 34, 136. Mr. Ellis also admitted to this mental health counselor that "methamphetamine and cannabis exacerbate his mental health issues," which includes schizophrenic auditory hallucinations. *Id*.

Ellis remained in custody for roughly a month on the robbery charge. On October 21, 2019, Pierce County Judge Garold Johnson granted Ellis' release so that he could obtain treatment pursuant to a "Jail Transitional Service Plan," but on the condition that he not consume any methamphetamine and/or unprescribed substances. *Id*. at ¶ 6, Ex. D. Ellis was facing prison time on the charge. His trial date was April 1, 2020. *Id*.

Ellis's next known interaction with law enforcement was the incident underlying this lawsuit. On March 3, 2020, Ellis violated his conditions of release by consuming a potentially lethal amount of methamphetamine. *Id*. at ¶ 7, Ex. D, A p. 2. He stood in the middle of the street and attempted to get into a vehicle as it passed. *Id*. ¶ 7, Ex. D, p. 15-16, 19-21. Tacoma Police Officers Matthew Collins and Christopher Burbank observed Ellis' behavior and attempted to make contact with him. *Id.* Ellis ran to the officer's patrol vehicle, his eyes wide, sweating profusely. *Id.* He began speaking rapidly about having "a bad day," being "really hot" needing to "sit down for a couple of days," and having issues with warrants. *Id.* Officer Collins instructed Ellis to sit down on the sidewalk curb so that they could pull their vehicle over and help him. *Id.* Ellis responded to Officer Burbank, "Instead I might just punch you in the fucking face" and began punching the officer's passenger window. *Id.* Officer Collins, the driver, ran around the vehicle from the driver's side to attempt to control Ellis, but Ellis lifted and threw Collins to the ground. *Id.* Both Officers struggled with Ellis for three to four minutes trying to gain control of him. *Id.*

They radioed urgently for assistance given their inability to overcome Ellis' significant resistance. They were eventually able to get Ellis into handcuffs. *Id.*

Other officers arrived in response to Collins' and Burbank's calls for assistance. *Id.* They observed Ellis violently thrashing in the handcuffs, making grunting noises, and spitting at officers. *Id.* at p. 16, 21, 30. Officers eventually used hobbles to control Ellis' legs and a spit hood to stop Ellis from spitting at officers. *Id.* Officers also immediately called for medical personnel to evaluate Ellis for his injuries. *Id.* Some officers suspected Ellis was experiencing the constellation of symptoms commonly known as "excited delirium." *Id.* at p. 16, 30. While waiting for medical personnel to arrive, officers watched Ellis' breathing, checked his pulse and injuries, and twice rolled him onto his side into a "recovery position." *Id.* at p. 16, 25, 31.

Tacoma Fire Department arrived and noted Ellis exhibited garbled speech. *Id*. at ¶ 8, Ex. F, p 4. They also noted he had respiratory drive, but that it deteriorated into labored breathing; Ellis then ceased breathing. *Id*. Medics were unable to revive him. A toxicology report revealed that Ellis had an "extremely high methamphetamine concentration" (2400 ng/ML) in his blood among other substances, including amphetamine (54 ng/ml), ephedrine (19 ng/ml), and phenylpropanolamine (39 ng/ml). *Id*. at ¶ 3, Ex. A, p. 7-8. The Washington State Patrol Chief Toxicologist noted, "The methamphetamine amount was at a level where they have seen in plenty of other cases where methamphetamine was the cause of death." *Id*. at ¶ 9, Ex. G, p. 4. The Pierce County Medical Examiner also noted that the methamphetamine level was "well within the fatal range and could have caused his death independently." *Id*. at ¶ 3, Ex. A, p. 2. The autopsy also

found Ellis suffered from an enlarged heart; the autopsy report references medical records showing a history of cardiac and pulmonary disease resulting from history of drug abuse. *Id.* at p. 12. [3]

On May 4, 2022, Rankine's counsel notified all parties and Ellis' medical providers of his intent to subpoena Ellis' medical records; the notice provided a deadline for obtaining a protective order to stop the subpoena process. *Id*. at ¶ 10, Ex. H. Rankine served the subpoenas after the prescribed waiting period; no objection was made, and no protective order sought. *Id*. at ¶ 10. Only then did DSHS, SeaMar, Greater Lakes Mental Healthcare, Comprehensive Life Resources, and the Pierce County Sheriff- Corrections- Jail object pursuant to various state and federal laws[4] regarding confidential and privileged records and/or indicated that they needed either a signed authorization or a court order to produce the records.[5] *Id*., ¶ 11, Ex. I. Additionally, Ellis also

---

[3] The Postmortem Examination Report details medical records disclosing a problem list consisting of: dilated cardiomyopathy, ADHD, chest pain, methamphetamine abuse, anxiety, asthma, IVDA, acute pericarditis, pneumonia, pericardial effusion without cardiac tamponade, hypoxia, pleurisy, and SIRS. *Conrad Decl.,* Ex. A.

[4] RCW 74.04.060; CFR 45 (C), 42 C.F.R. Part 2; RCW 70.02.230 2o; RCW 5.56.010; RCW 70.02 et seq.; RCW 70.48, et seq.

[5] Comprehensive Life Resources objected and responded that: "Our facility requires a Judicially signed subpoena in order to release records for the client. **Please provide us with a judicially signed subpoena or a signed authorization from the client's personal representative** with paperwork showing that the personal representative is able to sign for the client." *Conrad Decl*., at Ex. I (emphasis added).

Sea Mar objected and responded that: "A subpoena issued by an attorney alone is not sufficient when records are sought for substance use disorder treatment records. The federal regulations at 42 CFR Part 2 require a court order." *Conrad Decl*., at Ex. I (emphasis added).

Greater Lakes Mental Healthcare objected and responded that: "Pursuant to the requirements of C.F.R. 45 (C), 42 C.F.R. Part 2, RCW 70.02.230 2o, and RCW 5.56.010, Greater Lakes Mental Healthcare **requires a properly executed authorization with any supporting documentation, from next of kin or a Court Order signed by a judge** in order to release records…." *Conrad Decl*., at Ex. I (emphasis added).

DSHS objected and responded that: "We must have a valid authorization or court order to allow us to give you client records held by DSHS." *Conrad Decl*., at Ex. I (emphasis added).

Pierce County Sheriff's Department- Corrections responded: "Since the records are regarding an inmate, RCW 70.02 (health records) and 70.48 control (non-health records) release of the records. The Pierce

received drug and/or mental health treatment at Sundown M. Ranch, Fairfax Hospital and Lakeside Milam Recovery Center. *Id.*, ¶ 12. Each of these facilities have also indicated that they will require a court order or signed authorization prior to release. *Id.*

Rankine therefore requests a court order compelling production of Ellis' medical, mental health, and drug treatment records. Rankine has repeatedly sought plaintiff's cooperation in securing these records by stipulation without success. *Id.* at ¶ 13.

### III. ARGUMENT

The scope of discovery is broad: "[W]ide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth." *Epstein v. MCA, Inc*., 54 F.3d 1422, 1423 (9th Cir. 1995). District courts have broad discretion in determining relevancy for discovery purposes. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Information need not be admissible to be discoverable. Fed. R. Civ. P. 26(b)(1). Plaintiffs have waived physician-patient privilege because they have brought a myriad of federal and state law claims that specifically put Ellis' physical and mental health at issue;[6] accordingly, Ellis' medical and mental health records are discoverable.

Plaintiffs claim that the defendants intentionally inflicted emotional distress and caused Ellis' death; destroyed parent-child relationships; that Ellis "would have lived for several decades;" and that Ellis lost earnings, lost enjoyment of life, and suffered special and general damages. Complaint, Dkt. No. 22 at 5.14, 5.24-.25, 6.1-.5. Ellis' medical, mental health, and drug

---

County Sheriff's Department can only provide responsive documents once the statutes have been satisfied."

[6] "Plaintiffs waive their physician-patient privilege when they voluntarily put their physical or mental health at issue in a judicial proceeding." *Lodis v. Corbis Holdings, Inc.*, 172 Wn. App. 835, 854, 292 P.3d 779 (2013); *see also* RCW 5.60.060(4)(b) ("Ninety days after filing an action for personal injuries or wrongful death, the claimant shall be deemed to waive the physician-patient privilege.").
Defendant Rankine's Motion for Court Order for Medical Records - 6

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

treatment history are squarely at issue and essential to properly evaluate the underlying facts of the incident, his cause of death, the projected quality and duration of his life had he lived, his relationship with beneficiaries, his likely future earnings, and other general and special damages issues. Ellis' medical and mental health records will also provide highly relevant insights into Ellis' lifestyle, health habits, drug use, rehabilitation efforts, medical conditions, diagnoses, prognoses, social life, familial relationships, and future prospects – these topics go directly to the issue of damages, as plaintiffs seek economic and non-economic relief on multiple claims.[7] Indeed, the Pierce County Alliance mental health records, which were produced pursuant a search warrant during the investigation of this matter, reveal critical facts regarding Ellis' activities leading up to the incident at issue, his mental state, medical history, relationship with family members, history of drug use, etc. *See Conrad Decl.* ¶ 11, Ex. C.

Pursuant to RCW 70.02.060, prior to issuing the subpoenas, Rankine provided advance notice to each health care provider and the estate's counsel indicating from whom, by when, and what information is sought, as well as the day a protective order must be obtained to prevent the provider from complying. *Conrad Decl*., at ¶ 10. "In the absence of a protective order issued by a court of competent jurisdiction forbidding compliance, the health care provider shall disclose the information in accordance with this chapter." RCW 70.02.060. Notably, neither plaintiffs nor any medical provider sought a protective order or an order quashing the subpoenas.

Certain state statutes and federal regulations allow the production of specific types of health records only upon court order and/or stipulation. *See* e.g., RCW 70.02.230; 34 CFR Section 361.38; and 42 CFR [Part 2] §2.61 (b)(1) ("(b)(1) A person holding records subject to the

---

[7] Currently available information also provides that Ellis previously underwent substance abuse treatment and was diagnosed with depression, bipolar disorder, ADHD, PTSD, and schizo-affective disorder. *Id*., Ex. C.

regulations in this part receives a subpoena for those records. The person may not disclose the records in response to the subpoena unless a court of competent jurisdiction enters an authorizing order under the regulations in this part.")). To date, plaintiff Monet Carter-Mixon has refused to sign any voluntary release of records; accordingly, Rankine moves this Court for an order compelling production.

As listed above, all of the providers have raised statutory objections to disclosure, taking the position that a subpoena issued by an attorney is not sufficient to meet the "order of a court" provisions of these statutes and regulations. Thus, Rankine seeks an order from this Court compelling production from the providers listed below in order to effectuate production of this necessary discovery.[8] Additionally, to avoid having to bring this same motion in the future, Rankine requests that the order also be directed to any of Ellis' medical providers not yet identified.

1. Washington State- Department of Social and Health Services
2. Greater Lakes Mental Healthcare
3. Pierce County Sheriff's Department; Corrections; Jail
4. Sea Mar Rehabilitation
5. Comprehensive Life Resources
6. Sundown M. Ranch
7. Fairfax Hospital
8. Lakeside Milam Recovery Center

### IV.   CONCLUSION

A court order is the most expeditious avenue to get the discoverable medical records and avoid unnecessary delay. Rankine requests that this Court enter an order compelling all medical, mental health, drug treatment, and behavioral health records related to Manuel Ellis.

---

[8] Defendant Rankine has no opposition to limiting the scope of production to records dated/created on or after March 3, 2013, i.e., seven years prior to the incident underlying plaintiff
Defendant Rankine's Motion for Court Order for
Medical Records - 8

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

DATED this 14th day of July 2022.

FREY BUCK, P.S.

By: *[signature: TBuck]*
Ted Buck, WSBA #22029
Anne Bremner, WSBA # 13269
Mark Conrad, WSBA #48135
*Attorneys for Defendant Rankine*

# CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Plaintiffs**
James Bible, WSBA #33985
JAMES BIBLE LAW GROUP
14205 SE 36th St. Ste. 100
Bellevue, WA 98006
james@biblelawgroup.com

**Attorneys for Plaintiffs**
Stephen Dermer (Pro Hac Vice)
Matthew A. Ericksen, Sr. (Pro Hac Vice)
DERMER APPEL RUDER, LLC
708 Holcomb Bridge Road
Norcross, GA 30092
sdermer@darlawllc.com
mericksen@darlawllc.com
dlyner@darlawllc.com

**Attorneys for Defendant City of Tacoma**
Robert L. Christie, WSBA #10895
John Barry, WSBA #55661
CHRISTIE LAW GROUP, PLLC
2100 Westlake Ave. N., Suite 206
Seattle, WA 98109 US
bob@christielawgroup.com
john@christielawgroup.com
shawn@christielawgroup.com

**Attorneys for Defendant Pierce County**
Peter J. Helmberger, WSBA # 23041
Pierce County Prosecutor / Civil
955 Tacoma Avenue South, Suite 301
Tacoma, WA 98402-2160
peter.helmberger@piercecountywa.gov

**Attorney for Defendant Matthew Collins**
Casey M. Arbenz, WSBA # 40581
PUGET LAW GROUP
708 Broadway Suite 400
Tacoma, WA 98402
Casey@pugetlawgroup.com

**Attorneys for Defendant Christopher Burbank**
Brett Purtzer, WSBA #17283
Wayne Fricke, WSBA #16550
1008 South Yakima Ave., Suite 302
Tacoma, WA 98405
Brett@hesterlawgroup.com
Wayne@hesterlawgroup.com

DATED this 14th day of July 2022 at Lynnwood, Washington.

_____
Stephanie Johnson

Defendant Rankine's Motion for Court Order for
Medical Records - 11

FREY BUCK, P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660