1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MONET CARTER-MIXON, *et al.*,

                    Plaintiffs,

     v.

CITY OF TACOMA, *et al.*,

                    Defendants.

CASE NO. C21-05692-LK

REDACTED ORDER GRANTING
IN PART, DENYING IN PART,
AND DEFERRING IN PART
TELEPHONIC MOTION TO
COMPEL RELEASE OF MEDICAL
RECORDS

16

17

18

19

20

21

22

23

24

      This matter comes before the Court on Defendant Timothy Rankine's telephonic motion to compel production of Manuel Ellis's medical records from providers who have declined to produce them in response to subpoenas. The Court denied Officer Rankine's first two motions to compel, Dkt. Nos. 55, 64, because the parties failed to meet and confer before the motions were filed. Dkt. Nos. 57, 71. Two weeks after the Court denied Officer Rankine's second motion to compel, counsel for Plaintiffs notified the Court that the parties remained at an impasse in their discovery dispute, and requested a telephonic conference with the Court to resolve the dispute pursuant to Local Civil Rule 7(i) ("[A] motion may be heard by telephone without the filing of motion papers."). The Court held the telephone conference on September 19, 2022. Dkt. No. 75.

1   During that conference, the parties requested that the Court consider their most recent briefing on

2   the issue, Dkt. Nos. 64–68, as incorporated by reference in the telephonic motion, and the Court

3   accordingly considers that briefing and the supplemental declaration, Dkt. No. 74, in resolving the

4   telephonic motion. For the reasons set forth below, the Court grants the motion in part, denies it in

5   part, and defers it in part.

6                                    **I.    BACKGROUND**

7           On March 4, 2020, Manuel Ellis died while in police custody. Dkt. No. 22 at 7, 12–13;

8   Dkt. No. 65-1 at 11. His mother, Marcia Carter, and his sister, Monet Carter-Mixon,[1] sued the City

9   of Tacoma, Tacoma Police Officers (including Officer Rankine), Pierce County, and Pierce

10  County Sheriff Deputies, alleging among other things that the defendant police officers' and sheriff

11  deputies' excessive force against Mr. Ellis in their encounter with him resulted in his death. *Id.* at

12  1–4, 24–29. Defendants counter that intoxication caused or contributed to Mr. Ellis's death. Dkt.

13  No. 23 at 21; Dkt. No. 48 at 22; Dkt. No. 49 at 21–22; Dkt. No. 50 at 19.

14          In May and June 2022, Officer Rankine served subpoenas for the production of Mr. Ellis's

15  medical and mental health records from numerous facilities. Dkt. No. 65-8 at 1–2, 6, 9–29.[2] The

16  subpoenas requested the providers' "complete file" on Mr. Ellis, "including but not limited to any

17  and all medical records, chart notes, diagnostic reports, lab reports, test results, imaging, reports,

18  orders, photographs, videos, correspondence, pharmacy prescriptions, and billing records

19  regardless of whether the records were generated by you or provided to you." *See, e.g.*, Dkt. No.

20  65-8 at 27.

21

22  _____

[1] Ms. Carter-Mixon brings claims in her capacity as the personal representative of Mr. Ellis's estate. *Id.* at 3–4, 28.

23

24  [2] It is unclear to how many facilities Officer Rankine sent subpoenas. His notices of intent to serve subpoenas list 14 entities. Dkt. No. 65-8 at 1–2, 6. He has filed five letters purporting to attach subpoenas, but multiple copies of those subpoenas are addressed to DSHS. *Id.* at 9–29. The most recent motion he has filed with this Court seeks to compel responses from eight providers. Dkt. No. 64 at 9.

Washington State Department of Social and Health Services ("DSHS"), Pierce County Sheriff's Department-Corrections Bureau, Greater Lakes Mental Healthcare, Comprehensive Life Resources, and Sea Mar Rehabilitation objected to the subpoenas as follows:

- Greater Lakes Mental Healthcare stated that it required a properly executed authorization or a court order to release the records pursuant to "C.F.R. 45(C) [sic], ███████████████, RCW 70.02.230 2o [sic], and RCW 5.56.010," and that any authorization or court order must meet the requirements of Section 70.96A.020 of the Revised Code of Washington[3] and ███████████. Dkt. No. 65-9 at 1.

- Comprehensive Life Resources stated that it required a "judicially signed subpoena" or signed authorization to release the records. *Id.* at 2.

- Washington State DSHS stated that it required authorization or a court order that complied with applicable confidentiality laws, including 45 C.F.R. § 164.508 and Wash. Rev. Code § 70.02.030(3). *Id.* at 3.

- Sea Mar responded that it required a court order under ███████████. *Id.* at 5.

- Pierce County Jail responded that the requirements of Wash. Rev. Code §§ 70.02 *et seq.* and 70.48 *et seq.* had to be satisfied before it could release the records. *Id.* at 6.

Counsel for Officer Rankine spoke with representatives from each of these five facilities as well as ██████████████████, Fairfax Behavioral Health, and █████████████, and each representative indicated that they required a signed release or a court order to release the records. Dkt. No. 65 at 3–4.

Counsel have met and conferred but have been unable to resolve the dispute. Dkt. No. 74 at 1–2. Plaintiffs' counsel explained during the telephone conference that Ms. Carter-Mixon, the

---

[3] Section 70.96A.020 of the Revised Code of Washington has been repealed. 2016 Wash. Legis. Serv., 1st sp. sess., ch. 29, § 301.

1 personal representative of Mr. Ellis's estate, has not signed an authorization to allow the parties to

2 obtain the records because Officer Rankine's request for records was too broad.

## II.    DISCUSSION

**A.    Legal Standards**

A party may serve a subpoena commanding a nonparty "to produce documents, electronically stored information, or tangible things[.]" Fed. R. Civ. P. 45(a)(1)(C). The subpoena is subject to the relevancy requirements set forth in Federal Rule of Civil Procedure 26(b). *See, e.g.*, *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679–80 (N.D. Cal. 2006). Under Rule 26(b)(1),

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Where a case involves both state and federal claims, "the federal law of privilege applies to both." *Robertson v. Catholic Cmty. Servs. of W. Wash.*, No. C19-1618-RSM, 2020 WL 1819842, at *3 (W.D. Wash. Apr. 10, 2020). Medical information regarding physical health care is not shielded from discovery under a physician-patient privilege because "[t]here is no federal physician-patient privilege that bars a defendant from obtaining medical records." *Melendez v. Gulf Vessel Mgmt.*, No. C09-1100-MJP, 2010 WL 2650572, at *1 (W.D. Wash. July 1, 2010). Although confidential communications made to a psychiatrist or psychologist during the course of treatment are privileged under Federal Rule of Evidence 501, *see Jaffee v. Redmond*, 518 U.S. 1, 15 (1996), the "privilege may be waived when a plaintiff seeks certain emotional distress

1  damages." *Robertson*, 2020 WL 1819842, at *4. Courts in this district generally find waiver when

2  the plaintiff asserts "more than 'garden-variety' emotional distress." *Id.*

3  **B.     Privacy Law Protections**

4          Mr. Ellis's medical records are subject to protection under the Health Insurance Portability

5  and Accountability Act of 1996 ("HIPAA") and analogous state law. However, an entity subject

6  to HIPAA "may disclose protected health information in the course of any judicial or

7  administrative proceeding . . . [i]n response to an order of a court or administrative tribunal,

8  provided that the covered entity discloses only the protected health information expressly

9  authorized by such order[.]" 45 C.F.R. § 164.512(e)(1)(i);[4] *see also* Wash. Rev. Code

10 § 70.02.230(2)(p) (mental health treatment records can be disclosed pursuant to a court order);

11 Wash. Rev. Code § 70.48.100(2)(c) (records of a person "confined in jail" may be disclosed "[f]or

12 use in court proceedings upon the written order of the court in which the proceedings are

13 conducted"). The records can also be disclosed with proper authorization from patients or their

14 representatives. 45 C.F.R. § 164.508 (allowing disclosure with authorization); 45 C.F.R.

15 § 164.502(g)(1) (requiring entities to treat personal representatives as the "individual" at issue,

16 subject to exceptions not applicable here); 34 C.F.R. § 361.38(c) (records can be released to an

17 individual's representative); *see also* Wash. Rev. Code § 70.02.030(1) (patient may authorize

18 disclosure); Wash. Rev. Code § 70.02.140 ("A personal representative of a deceased patient may

19 exercise all of the deceased patient's rights under this chapter."); ████████████████████

20 ███████████████████████████████████████████████████████████████████████

21 ██████████████

22

23

24  [4] The entity may also disclose the information in response to a subpoena if it receives satisfactory assurances that a protective order is in place. 45 C.F.R. § 164.512(e)(1)(ii)(B) and (e)(1)(v).

REDACTED ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN PART TELEPHONIC
MOTION TO COMPEL RELEASE OF MEDICAL RECORDS - 5

1  ███████████████████████████████████████████████

2  ██████████████████████████████████████████████████

3  ██████████████████████████████████████████████████

4  ██████████████████████████████████████████████████

5  ██████████████████████████████████████████████████

6  ██████████████████████████████████████████████████

7  ██████████████████████████████████████████████████

8  ██████████████████████████████████████████████████

9  ██████████████████████████████████████████████████

10 ██████████████████████████████████████████████████

11 ██████████████████████████████████████████████████

12 ██████████████████████████████ Here, although the providers had a chance to

respond to the subpoenas, they have not had an opportunity to file a written response with the

Court.

If Ms. Carter-Mixon provides consent for access Mr. Ellis's records as set forth below, a

court order will not be necessary. Therefore, the Court defers the motion as to any provider subject

to ████████████: if consent is obtained, the Court will order the motion moot as to such

providers. If consent is not obtained, the Court will provide an opportunity for the providers to

respond before ruling on this portion of the motion.

C.    **Unnamed Health Care Providers**

Officer Rankine requests an order that commands additional unnamed medical providers

to produce Mr. Ellis's "medical, mental health, and/or treatment records upon issuance of any

subpoena in this matter when this order is attached to said subpoena." Dkt. No. 64-1 at 2. The

1   Court denies that request without prejudice because it cannot be evaluated without knowing the

2   nature of the providers' services to Mr. Ellis or the types of records they might hold.

3   **D.      Relevance and Proportionality**

4          Officer Rankine has largely established the relevance and proportionality of the records he

5   seeks. However, he has not satisfactorily established the relevance of Mr. Ellis's billing records as

6   requested in the subpoenas. *See, e.g.*, Dkt. No. 65-8 at 27. Presumably, any issue for which Mr.

7   Ellis or a third-party payor was billed would also be reflected in the medical records, and there is

8   no suggestion that Plaintiffs are seeking to recoup the cost of past medical bills as part of their

9   damages in this case. Because the relevance of the providers' billing records has not been

10  established, they will not be compelled at this time.

11         In contrast, the other medical records requested by Officer Rankine are relevant to this

12  case. Plaintiffs argue that absent Defendants' actions, Mr. Ellis's death would not have occurred.

13  Dkt. No. 22 at 28–29. Defendants counter that Mr. Ellis's own actions caused or contributed to his

14  death. Dkt. No. 23 at 21; Dkt. No. 29 at 18–19; Dkt. No. 48 at 22; Dkt. No. 49 at 21–22; Dkt. No.

15  50 at 19. They also assert that his health and ███████ history, including ███████ and

16  related conditions, is "essential to properly evaluate the underlying facts of the incident, his cause

17  of death, the projected quality and duration of his life had he lived, his relationship with

18  beneficiaries, his likely future earnings, and other general and specific damages issues." *See* Dkt.

19  No. 64 at 2–5, 11.

20         The cause of and potential contributing factors to Mr. Ellis's death are squarely at issue in

21  this case, and his medical records are relevant to whether pre-existing conditions caused or

22  contributed to his death. The records are also relevant to damages. Ms. Carter brings a claim for

23  the loss of the "companionship and society" of her son. Dkt. No. 22 at 28. Plaintiffs also assert that

24  Mr. Ellis was 33 years old when he died, and "[b]ased on his life expectancy it is expected that he

would have lived for several decades if his life had not been abruptly cut short by the Defendants." *Id.* at 29. They seek damages for his lost earnings and lost earning capacity. *Id.* at 30. Plaintiffs acknowledge that Officer Rankine has sought to compel records from eight providers, *see* Dkt. No. 66 at 5, and they concede that "*some* of Manuel's medical records could be relevant and discoverable in this case," *id.* at 4 (emphasis in original). However, they argue that the Court should not compel production because Officer Rankine already has some of those records. *Id.* at 4. This argument has no basis in law. Plaintiffs' subjective determination that Defendants have obtained sufficient documentation does not preclude Defendants from seeking to discover other relevant records, particularly since Defendants cannot depose Mr. Ellis regarding his medical issues. Because Mr. Ellis's life expectancy, earning capacity, and relationship with his family could have been affected by his medical conditions, his medical records are relevant.

Furthermore, doctor-patient privilege does not bar disclosure of these records. First, because "[t]here is no federal physician-patient privilege that bars a defendant from obtaining medical records," Defendants are entitled to access the medical records of physicians who treated Mr. Ellis. *Melendez*, 2010 WL 2650572, at *1. Second, with respect to the psychologist/psychiatrist-patient privilege, Plaintiffs have placed Mr. Ellis's mental health history at issue by asserting damages for lost enjoyment of life, loss of consortium, and "more than garden-variety" emotional distress as a result of Defendants' actions. *See, e.g.*, Dkt. No. 22 at 29–30 (alleging among other things that "Manuel experienced unthinkable pain, suffering, and fear prior to death," that "Manuel suffered for an extended period of time before he passed away," and that Defendants' actions resulted in injury to Ms. Carter's parent-child relationship and loss of enjoyment of life). Mr. Ellis's mental health records will likely shed light on his relationship with his family and his emotional response to altercations with police in the past. Therefore, the Court

finds that the psychologist/psychiatrist-patient privilege has been waived. *See, e.g.*, *Robertson*, 2020 WL 1819842, at *4.

The Court must also consider the proportionality and appropriate scope of Officer Rankine's request. In evaluating proportionality, courts must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Uhler v. Van Cleave*, No. C16-1278-RSM, 2017 WL 553276, at *5 (W.D. Wash. Feb. 10, 2017). As set forth above, Ms. Carter-Mixon, as personal representative, could access the medical information herself through an authorization and request, whereas Defendants cannot access the information absent Ms. Carter-Mixon's authorization or a Court order. Plaintiffs are seeking "immense damages" in this case, Dkt. No. 22 at 29, and the Court finds that the burden and expense of production is not disproportionate to the needs of the case.

With respect to the temporal scope of the discovery, Plaintiffs suggest that the records should be narrowed to the two-year period before Mr. Ellis's death. Dkt. No. 66 at 7. Officer Rankine requests records that span ten years prior to Mr. Ellis's death. The Court finds that Officer Rankine's request is well-supported; the medical information available at this point suggests that events and issues impacting Mr. Ellis's mental and physical health date back at least ten years. *See, e.g.,* Dkt. No. 65-8 at 23 (noting that Mr. Ellis ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); *accord Melendez*, 2010 WL 2650572, at *1–2 (compelling plaintiff to provide a medical release allowing defendant to obtain his medical records for the past 10 years in a case involving alleged physical injuries sustained during employment on defendant's boat; noting that the defendant's "request for medical information from only the last ten years negates Melendez's concerns about handing over a 'lifetime of medical history' that may not be

wholly relevant."). It is reasonable to anticipate that any condition that could have impacted Mr. Ellis's life expectancy, earning capacity, and/or cause of death would appear in medical records during the 10 years prior to his death. Accordingly, the Court requires providers to submit records for Mr. Ellis dated between March 4, 2010 through March 4, 2020, the date of his death.

**E.      Authorization to Release Records**

During the telephone conference, the Court asked Ms. Carter-Mixon's counsel if his client would sign an authorization for Defendants to obtain Mr. Ellis's medical records if the Court limited the scope to a 10-year period for all facilities as it has done above. Counsel responded that Ms. Carter-Mixon would sign such an authorization.[5] Based on that representation and the practice in this district of requiring parties to sign releases to obtain records,[6] the Court orders Ms. Carter-Mixon to sign an authorization allowing Defendants to obtain Mr. Ellis's medical records from the providers listed in this order for use in this case.

The parties shall file a joint status report within 10 days of the date of this Order advising the Court that the authorization was signed. If there is any issue with obtaining the authorization, the parties must alert the Court in their joint status report. If an authorization cannot be obtained, the Court will issue a further order providing entities subject to ███████ notice and an opportunity to respond.

### III.      CONCLUSION

For the foregoing reasons, the Court GRANTS in part, DENIES in part, and DEFERS in part Officer Rankine's telephonic motion to compel. Within 30 days of the date of this order, any of the following providers that are not subject to ███████ shall provide all medical,

---

[5] The "collegial practice of [signing stipulations for records releases] is fairly routine in this district." *Robertson*, 2020 WL 1819842, at *7 n.7 (cleaned up) (brackets in original).

[6] *See Putterman v. Supreme Chain Logistics, Ltd.*, No. C18-376-RSM, 2018 WL 6179325, at *3 (W.D. Wash. Nov. 27, 2018) (collecting cases).

mental health, and/or treatment records dated March 3, 2010 through March 3, 2020 for Manuel

E. Ellis, DOB 08/28/1986:[7]

    a.  Washington State-Department of Social and Health Services

        1949 State St., Tacoma, WA 98405

    b.  Pierce County Sheriff's Department-Corrections Jail

        910 Tacoma Avenue S, Tacoma, WA 98402

    c.  Comprehensive Life Resources

        1305 Tacoma Avenue S, Tacoma, WA 98402

    d.  Sea Mar Rehabilitation

        1415 Center Street, Tacoma, WA 98409

    e.  Greater Lakes Mental Healthcare

        9330 59th Ave SW, Lakewood, WA 98499

    f.  Fairfax Hospital

        10200 NE 132nd St., Kirkland, WA 98034

    g.  ██████████████████████

        ███████████████████████████

    h.  ███████████

        ██████████████████████

    The Court defers the motion as to any of the above-listed entities that are subject to ███

████████, including but not limited to Sea Mar Rehabilitation and Greater Lakes Mental

Healthcare.

---

[7] The Court has not redacted Mr. Ellis's birthdate because he is deceased. LCR 5.2(a)(1).

1    Any individual receiving Mr. Ellis's medical or treatment records must treat them in

2    accordance with the Stipulated Protective Order, Dkt. No. 63, and any applicable laws and rules

3    regarding such records.

4    The Clerk of the Court is directed to seal this Order given the sensitive nature of the

5    information therein. LCR 5.2(a). The Court will file a redacted copy of this Order and provide

6    unsealed copies to the parties. By 5:00 p.m. on September 23, 2022, the parties are ordered to file

7    a sealed joint motion under Local Civil Rule 5(g) identifying (1) any documents in the record that

8    should be sealed and/or redacted in accordance with the Protective Order, applicable law, and the

9    Local Rules, including but not limited to Local Civil Rules 5(g) and 5.2, and (2) any disagreements

10   among the parties regarding such sealing/redaction. Any proposed redacted document must be

11   filed under seal as attachments to the motion. Defendant Rankine's counsel is reminded to exercise

12   care in protecting sensitive information, and further violations of the protective order, the Local

13   Rules, and/or applicable privacy rules may result in the imposition of sanctions.[8]

14   Dated this 20th day of September, 2022.

15

16   Lauren King
     United States District Judge

17

18

19

20

21

22

23

24   [8] Even after Officer Rankine was notified that his prior filing improperly included the birth dates of third parties, Dkt. No. 66 at 7, he did not remedy the problem by seeking to have the document sealed and filing a redacted copy.