UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MONET CARTER-MIXON, et al.,<br><br>                      Plaintiffs,<br>     v.<br><br>CITY OF TACOMA, et al.,<br><br>                      Defendants. | CASE NO. 3:21-cv-05692-LK<br><br>ORDER GRANTING IN PART MOTION TO CONTINUE STAY |

      This matter comes before the Court on a motion filed by Officers Timothy Rankine, Christopher Burbank, Matthew Collins, Masyih Ford, Armando Farinas, and Ron Komarovsky (collectively, the "Defendant Officers") to continue the stay in this case. Dkt. No. 91; *see also* Dkt. No. 93-1 (corrected motion).[1] For the reasons set forth below, the Court grants the motion in part and continues the stay for a limited period.

---

[1] The Defendant Officers include Officers Gary Sanders and Anthony Messineo in the list of those requesting the stay. Dkt. No. 93-1 at 1. However, Officers Messineo and Sanders were dismissed by stipulated motion in July 2022, Dkt. Nos. 58–59, and their counsel has not signed the motion, Dkt. No. 93-1 at 10.

ORDER GRANTING IN PART MOTION TO CONTINUE STAY - 1

## I.  BACKGROUND

Manuel Ellis died while law enforcement officers attempted to arrest him on March 3, 2020. Dkt. No. 22 at 7–12. His family and estate have sued the City of Tacoma, Tacoma Police Officers (including Christopher Burbank, Matthew Collins, and Timothy Rankine), Pierce County, and Pierce County Sheriff Deputies, alleging among other things that the Defendant Officers' excessive force against Mr. Ellis violated his constitutional rights and caused his death. *Id.* at 1–6, 24–29. They filed this action in September 2021 asserting claims under 42 U.S.C. § 1983 and state tort law. Dkt. No. 1; Dkt. No. 22 at 24–28.

The State of Washington prosecuted Officers Collins and Burbank for murder and Officer Rankine for manslaughter; the cases were consolidated in Pierce County Superior Court. Dkt. No. 81 at 1–2; Dkt. No. 82 at 2. While the criminal matter was pending, the parties filed a stipulated motion to stay this case, jointly arguing that a stay was warranted because (1) the criminal prosecution involved the same incident—Mr. Ellis's March 3, 2020 death—at issue in this case, (2) the Washington Attorney General declined to grant the other Defendant Officers immunity from future prosecution for their involvement in the incident, (3) "the *Monell* claim against the City of Tacoma will turn in large part on the claims against the defendant officers," and (4) the officers' likely invocation of their Fifth Amendment rights during their depositions "may expose the defendant officers to an adverse inference and also interferes with the Plaintiffs' ability to obtain otherwise discoverable information[.]" Dkt. No. 81 at 1–2; *see also id.* at 3. The Court granted the stipulated motion. Dkt. No. 83.

In December 2023, the jury in the criminal case returned not guilty verdicts in favor of all three officers. Dkt. No. 93-1 at 4. Plaintiffs in this case then requested that the U.S. Attorney's Office for the Western District of Washington review the case. Patrick Malone, *Tacoma officers acquitted in Manuel Ellis' death to leave department*, The Seattle Times (Jan 16, 2024 8:25 PM)

1  https://www.seattletimes.com/seattle-news/times-watchdog/tacoma-officers-acquitted-at-trial-
2  but-agree-leave-department-in-wake-of-manuel-ellis-death/. Subsequently, the U.S. Attorney's
3  Office announced it was "conducting an independent review of the state's case concerning Manuel
4  Ellis' death," and that "[i]f that review reveals violations of federal criminal statutes, the Justice
5  Department will take appropriate action." *U.S. attorney for western Washington to independently*
6  *review Manuel Ellis' death*, KING5 News (Jan. 12, 2024 10:46 PM)
7  https://www.king5.com/article/news/local/death-of-manuel-ellis/us-attorney-investigate-manuel-
8  ellis-death/281-fa7aee2e-9fb7-4dfd-b727-66f559d0e6c4.[2] The Defendant Officers seek a stay
9  pending the conclusion of that review. Dkt. No. 93-1 at 4.

## II. DISCUSSION

A. **Legal Standard**

The Constitution generally does not require a stay of civil proceedings pending the outcome of a parallel criminal case. *Keating v. Off. Of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995); *accord Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989). "In the absence of substantial prejudice to the rights of the parties involved, simultaneous parallel civil and criminal proceedings are unobjectionable under our jurisprudence." *Keating*, 45 F.3d at 324 (cleaned up). This is because a total stay of civil discovery pending the outcome of related criminal matters "is an extraordinary remedy appropriate for extraordinary circumstances." *Weil v. Markowitz*, 829 F.2d 166, 174 n.17 (D.C. Cir. 1987); *accord Whitsitt v. Allen & Assocs., LLC*, No. C13-1133-JCC, 2014 WL 11997865, at *2 (W.D. Wash. Mar. 27, 2014). Thus, although a district court has broad discretion to stay proceedings, the moving party bears the burden of demonstrating that a stay is warranted. *Clinton v. Jones*, 520 U.S. 681, 708 (1997); *Grassmueck v. Zhou Yan*, No.

---

[2] The Court takes judicial notice of the news articles, to which Defendants cite and Plaintiffs do not object. Dkt. No. 93-1 at 4 n.1 & n.2; Fed. R. Evid. 201.

ORDER GRANTING IN PART MOTION TO CONTINUE STAY - 3

C17-0794-JLR, 2017 WL 3189035, at *2 (W.D. Wash. July 27, 2017).

In determining whether to stay a civil action in light of parallel criminal proceedings, a district court must evaluate "the particular circumstances and competing interests involved in the case." *Molinaro*, 889 F.2d at 902. The factors relevant to this inquiry include (1) the extent to which the defendant's Fifth Amendment rights are implicated; (2) the plaintiff's interest in proceeding expeditiously with the civil litigation, and the potential prejudice to the plaintiff from delay; (3) the burden imposed on the defendants; (4) judicial economy; (5) non-party interests; and (6) the public's interest in the pending civil and criminal proceedings. *Keating*, 45 F.3d at 324–25; *Molinaro*, 889 F.2d at 902–903.

**B.    An Extension of the Stay is Warranted**

    1.    Extent to Which the Defendant Officers' Fifth Amendment Privilege is Implicated

When deciding whether to grant a stay of civil proceedings, the Court must consider "the extent to which the defendant's [F]ifth [A]mendment rights are implicated." *Keating*, 45 F.3d at 324 (citation omitted). Although the potential impact on the defendant's privilege against self-incrimination is a "significant factor" in the stay calculus, "it is only one consideration to be weighed against others." *Id.* at 326. The Fifth Amendment privilege against self-incrimination "protects an individual from being forced to provide information that might establish a direct link in a chain of evidence leading to his conviction." *United States v. Stringer*, 535 F.3d 929, 938 (9th Cir. 2008).

Here, the Defendant Officers argue that continuing the stay is warranted because otherwise, they are in the same "Catch-22" as before, forced to choose between asserting the privilege to protect themselves from prosecution and facing an adverse inference for doing so. Dkt. No. 93-1 at 4, 6–7. Plaintiffs counter that continuing the stay is unwarranted because the State's criminal case has concluded, no indictment is pending against any of the Defendant Officers, and the U.S.

Attorney's Office may decide not to pursue charges. Dkt. No. 94 at 4–5. They also note that three of the Defendant Officers—Officers Collins, Rankine, and Ford—testified during the Pierce County criminal trial about the events of March 3, 2020 and Mr. Ellis's death. *Id.* at 6. Thus, they argue, "it is unclear how often, if at all, those same individuals would now invoke the Fifth Amendment in this lawsuit." *Id.*

Although those officers' prior trial testimony somewhat undermines their professed need for a stay, their prior testimony does not obviate their current concerns because, as the Defendant Officers note, "the federal prosecution would involve different charges than did the State prosecution." Dkt. No. 96 at 5. Thus, they apparently still plan to assert their Fifth Amendment rights in this case, as do the other Defendant Officers who did not testify in the Pierce County case. *Id.*

Turning to Plaintiffs' other arguments, they are correct that when, as here, a defendant has not yet been indicted, "the case for a stay is much weaker." *Grassmueck*, 2017 WL 3189035, at *2 (citation omitted); *Molinaro*, 889 F.2d at 903 ("The case for staying civil proceedings is a far weaker one when no indictment has been returned, and no Fifth Amendment privilege is threatened." (cleaned up)). "The case for a stay is weaker because the potential prejudice to a civil defendant facing a parallel criminal investigation is more remote than it is for an indicted defendant and the delay for the plaintiff is potentially indefinite." *Grassmueck*, 2017 WL 3189035, at *2.[3] To be sure, the potential prejudice is more remote now than it was when several of the Defendant Officers were actively being prosecuted. But the potential for prejudice still exists because "in civil proceedings adverse inferences can be drawn from a party's invocation of this Fifth Amendment right." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000). As the parties

---

[3] In *Grassmueck*, the court was unable to ascertain whether any criminal investigation against the defendant was ongoing. *Id.* That is not the situation here.

ORDER GRANTING IN PART MOTION TO CONTINUE STAY - 5

previously stipulated and the Court found, the first factor weighs in favor of a stay because if the Defendant Officers are deposed, they "will face 'a Catch-22: they would have to either risk self-incrimination or invoke their Fifth Amendment rights and suffer potential adverse inferences by doing so.'" Dkt. No. 83 at 3 (quoting Dkt. No. 81 at 6). This reality still exists because the U.S Attorney's Office is investigating the same events and facts at issue in this civil rights action. *See Klein v. Kim*, No. 2:20-CV-01628-BJR, 2021 WL 5356717, at *3 (W.D. Wash. Nov. 17, 2021) (noting that the extent of the overlap between the civil and criminal matters "is indeed an important factor when considering a stay" and evaluating prejudice); *L.C. v. Gilbert*, No. C09-5586-BHS, 2010 WL 1641533, at *2 (W.D. Wash. Apr. 21, 2010) (same). This factor thus weighs in favor of a stay.

2. Plaintiffs' Interest in Proceeding Expeditiously and the Potential Prejudice from Delay

The Defendant Officers contend that "while the [U.S. Attorney's Office] has not announced a timeline for its decision, there is no reason to anticipate a protracted federal review." Dkt. No. 93-1 at 7. Plaintiffs respond that they will be prejudiced by "an open-ended stay for an indefinite period of time" during that review period. Dkt. No. 94 at 4. They also note that when this motion was filed, the case had "already been stayed for over 14 months," they "are anxious to proceed[,] and they clearly have an interest in proceeding expeditiously with their case." *Id.* at 3.

Courts generally find a plaintiff's interest in expeditious resolution prejudiced when a stay will cause a lengthy or indefinite delay. *See, e.g.*, *United States v. Electron Hydro, LLC*, No. C20-1746-JCC, 2022 WL 594909, at *3 (W.D. Wash. Feb. 28, 2022); *Clinton*, 520 U.S. at 707–08 (delaying trial increases "the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, and the possible death of a party"); *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007) ("[L]engthy and indefinite stays place a plaintiff effectively out of court" and "inherently

ORDER GRANTING IN PART MOTION TO CONTINUE STAY - 6

increase[] the risk that witnesses' memories will fade and evidence will become stale" (citations omitted)); *CommScope, Inc. v. Electro Prods., Inc.*, No. CV-06-0577-RSM, 2007 WL 9775629, at *3 (W.D. Wash. Feb. 12, 2007) (plaintiffs would be prejudiced by negative consequences of delay, including witnesses relocating, fading memories, and the inability to seek vindication or redress for an indefinite period). Here, although there is a risk of memories fading and evidence becoming stale while the stay continues, declining to extend the stay will not ameliorate that risk. The Defendant Officers state that they plan to invoke their Fifth Amendment rights during their depositions, so Plaintiffs will not be able to obtain their substantive testimony even if the stay ends. Dkt. No. 93-1 at 6 ("With the looming federal review, countless invocations of the Defendant Officers' Fifth Amendment privilege will be necessary, as almost any information could potentially 'furnish a link in the chain of evidence needed' for prosecution."). Presumably, the bulk of the testimony from other witnesses was elicited during the Pierce County criminal trial. Other than the Defendant Officers' depositions, Plaintiffs have not identified any other discovery they would seek if the stay were lifted, nor have they advocated for a partial stay. Therefore, continuing the stay is unlikely to result in prejudice through lost evidence.

As for the potential prejudice from the delay in obtaining a resolution of this matter, there is a middle ground between denying the stay outright and continuing it indefinitely. A stay of a reasonable period of months would hopefully allow the U.S. Attorney's Office to conclude its investigation while avoiding undue prejudice to Plaintiffs. *See Klein*, 2021 WL 5356717, at *3 (staying case indefinitely, without any indication that defendant would waive his Fifth Amendment privilege in the near future, would prejudice plaintiff's ability to proceed to resolution expeditiously).

This factor thus weighs against a stay, but only moderately.

### 3. Burden Imposed on Defendants

The Defendant Officers contend that proceeding without a stay will leave them "unable to offer testimony that would assist in defense of the claims." Dkt. No. 93-1 at 8. As the Court previously found, "the officers would be burdened absent a stay by risking self-incrimination or invoking their Fifth Amendment rights with the potential adverse consequences of doing so." Dkt. No. 83 at 4. The Defendant Officers further argue that, as the Court previously found, "the City of Tacoma would also be burdened because, although 'it cannot be liable for the Plaintiffs' constitutional claims unless the Plaintiffs establish that an underlying constitutional violation occurred,' Plaintiffs' version of the facts could go unrefuted if the officers assert their Fifth Amendment rights." Dkt. No. 93-1 at 8 (quoting Dkt. No. 83 at 4); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 695 (1978)). As before, this factor weighs in favor of a stay.

### 4. Judicial Economy

"To determine whether judicial economy favors staying a case, courts examine whether the proceedings 'arise out of the same event' and the 'potential for complexity, overlapping issues, duplicative rulings, and conflict between the rulings of this Court and the criminal court.'" *Electron Hydro*, 2022 WL 594909, at *3 (quoting *Lakey v. Washington*, No. 3:20-CV-05557-RBL-JRC, 2020 WL 8617405, at *3 (W.D. Wash. Sept. 15, 2020)). District courts also have an interest in clearing their dockets and avoiding indeterminate delays. *Id.* This factor therefore normally does not weigh in favor of a stay. *Allen v. Nelson*, No. 2:21-CV-1097-BJR, 2022 WL 683209, at *3 (W.D. Wash. Mar. 8, 2022).

The Court previously found that "a stay will be convenient for the Court and conserve judicial resources because it will allow the Court to avoid ruling on potentially complex discovery issues related to the officers' invocation of the Fifth Amendment and will allow discovery to proceed more efficiently after the stay ends." Dkt. No. 93-1 at 8 (quoting Dkt. No. 83 at 4). The

Defendant Officers contend that those issues persist because they will invoke their Fifth Amendment rights during discovery, "leading to complex discovery issues and ongoing delays." *Id.* at 7. They also note that if the U.S. Attorney's Office decides to pursue charges, then the Court would "inevitably . . . impose another stay, considering the Plaintiffs' prior agreement and the Court's original decision." *Id.* at 8–9. They argue that such a result would be an "inefficient use of judicial resources." *Id.* at 9. Plaintiffs did not directly respond to those arguments. *See generally* Dkt. No. 94.

Because the Defendant Officers have not been indicted on federal charges, the risk of duplicative judicial efforts is currently nonexistent. *See Grassmueck*, 2017 WL 3189035, at *3 (judicial economy factor weighed against a stay when there were no parallel criminal proceedings because there was no risk of duplication of judicial efforts, and any delay would have burdened the docket indefinitely). However, the conservation of judicial resources and efficiency issues the Court identified in its prior Order remain and continue to weigh in favor of a stay. Dkt. No. 83 at 4; *L.C.*, 2010 WL 1641533, at *3 ("Staying the case makes efficient use of judicial resources by [e]nsuring that common issues of fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination."). In addition, the substantial factual overlap between this case and the criminal matter militate in favor of a stay, lest the Court make a ruling in this case that "would duplicate or contradict the outcome of th[e]" criminal matter. *Klein*, 2021 WL 5356717, at *3. Considerations of judicial economy and convenience thus support a limited continuance of the stay.

5. <u>Interests of Non-Parties and the Public</u>

The Defendant Officers contend that "[t]he overwhelming amount of public interest in the incident underlying this case was directed toward the state's criminal case against Officers Rankine, Burbank, and Collins, which has now been resolved." Dkt. No. 93-1 at 9. Post-acquittals,

1  "there are no specific non-parties with identifiable interests in this case." *Id*. They further argue
2  that "continuing to stay this matter serves the public interest by ensuring that this case does not
3  interfere with the integrity of the criminal process." *Id*. They also note that unlike the cases on
4  which Plaintiffs rely, this case does not involve "financial institutions, or public institutions, or
5  public figures." Dkt. No. 96 at 5. In their response, Plaintiffs do not identify any non-party or
6  public interest that would be implicated by a stay. *See generally* Dkt. No. 94. Nor do they dispute
7  that now that the Pierce County criminal trial has concluded, the public's interest in this civil trial
8  is less pronounced.

9  Generally, "[t]he public has an interest in relatively speedy resolution of civil matters."
10 *Allen*, 2022 WL 683209, at *3 (citation omitted). But unlike some of the cases in which this factor
11 weighed against a stay, this case does not involve a civil enforcement action. *See, e.g.*, *S.E.C. v.*
12 *Sandifur*, No. C05-1631C, 2006 WL 1719920, at *3 (W.D. Wash. June 19, 2006) (noting that "any
13 prejudice to Plaintiff is necessarily an injury to the public interest because this is a civil
14 enforcement action"). In addition, the public's interest in the integrity of a parallel criminal matter
15 generally takes precedence over the civil litigant's private interests. *L.C.*, 2010 WL 1641533, at
16 *3. That is the case here because, as set forth above, a ruling from this Court could "contradict the
17 outcome" of the criminal matter. *Klein*, 2021 WL 5356717, at *3. Balancing these issues against
18 the public's interest in the expeditious resolution of this matter, the Court finds this factor weighs
19 in favor of continuing the stay.

20 In sum, the *Keating*/*Molinaro* considerations weigh in favor of continuing the stay in this
21 case.

### III.  CONCLUSION

23 For the foregoing reasons, the Court GRANTS IN PART the motion to continue the stay,
24 Dkt. No. 91, and CONTINUES the stay in this matter for six months from the date of this Order

or until the U.S. Attorney's Office for the Western District of Washington decides whether to pursue federal criminal charges against the Defendant Officers, whichever comes first. The parties shall notify the Court when the U.S. Attorney's Office reaches a decision within 30 days of being notified of that decision. Any party may file a renewed motion to continue the stay if warranted.

Dated this 6th day of May, 2024.

*Lauren King*

Lauren King
United States District Judge